1  SOMMERS SCHWARTZ, P.C.
   Trenton R. Kashima (SBN 291405)
2  tkashima@sommersp.com
   402 West Broadway, Suite 1760
3  San Diego, California 92101
   Telephone: (619) 762-2125
4  Facsimile: (619) 762-2127

5  SOMMERS SCHWARTZ, P.C.
   Kevin J. Stoops (SBN 332200)
6  kstoops@sommersp.com
   Charles R. Ash, IV (*pro hac vice* forthcoming)
7  crash@sommersp.com
   One Towne Square, 17th Floor
8  Southfield, Michigan 48076
   Telephone: (248) 355-0300
9  Facsimile: (248) 436-8453

10 *Attorneys for Plaintiff*
   *and others similarly situated*

11

12                UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

| 14 | RENEE MORGAN and JEHANZEB KHAN, on behalf of themselves and others similarly situated, | Case No.: |
|---|---|---|
| 15 | | |
| 16 | Plaintiffs, | **CLASS ACTION COMPLAINT FOR:** |
| 17 | v. | 1. Failure to Pay Minimum Wages Under Labor Code §§ 226.2, 1194, 1194.2 and 1197; |
| 18 | EXPRESS MESSENGER SYSTEMS, INC., a Delaware Corporation, inclusive | 2. Failure to Pay Overtime Wages Under Labor Code §§ 510, 1194, 1198; |
| 19 | Defendant. | 3. Meal Period Liability Under Labor Code § 226.7; |
| 20 | | 4. Rest-Break Liability Under Labor Code § 226.7; |

1. Failure to Pay Minimum Wages Under Labor Code §§ 226.2, 1194, 1194.2 and 1197;
2. Failure to Pay Overtime Wages Under Labor Code §§ 510, 1194, 1198;
3. Meal Period Liability Under Labor Code § 226.7;
4. Rest-Break Liability Under Labor Code § 226.7;
5. Inaccurate Wage Settlements - Violation of Labor Code §§ 226(a), 226.2;
6. Waiting Time Penalties Under Labor Code §§ 201-03;
7. Reimbursement of Necessary Expenditures Under Labor Code § 2802; and
8. Violation of Business & Professions Code § 17200 *et seq*.
9. Violation of the Fair Labor Standards Act, 29 U.S.C. § 216(b)

**DEMAND FOR JURY TRIAL**

Plaintiffs Renee Morgan and Jehanzeb Khan, on behalf of themselves and all other similarly situated individuals, bring this Class Action Complaint files this complaint against Defendant Express Messenger Systems, Inc., dba, OnTrac ("Defendant" or "OnTrac") based on personal knowledge with respect to their own acts and on information and belief with respect to all other matter:

## I.    INTRODUCTION

1.    This lawsuit addresses OnTrac's deliberate scheme to misclassify their delivery drivers, thereby denying them the fundamental protections due to employees under California law and federal wage and hour law.  OnTrac offers package delivery services to addresses in California, Arizona, Nevada, Oregon, Washington, Utah, Colorado and Idaho. To do so, OnTrac does not hire drivers as employees, but independent contractors.  These independent contractors either contract directly with OnTrac or through third-party intermediaries, called Regional Service Providers.  However, Plaintiffs and other Class Members are plainly employees under California law.  OnTrac controls its drivers' operations, it coordinates with customers in need of delivery services, negotiates prices, sets delivery windows, and provides the workers, warehousing, and other infrastructure to support these deliveries.  OnTrac retains control over Plaintiffs' and Class Members' assignments, schedules, sets customer service standards, and provides its own electronic logging devices to complete deliveries.

2.    To deliver goods from merchants to addresses in its service areas, OnTrac drivers pick up packages from local OnTrac warehouses and distribute these packages to homes and business within the immediate area.  Drivers have to report to OnTrac warehouse at a set time, accept all packages assigned to them, load their truck (often time without pay), and deliver such packages for a set amount of compensation that is divorced from the hours worked.  Instead, drivers are paid per package delivered, a flat day rate, or some combination of both.

3.    The result of Defendant's misclassification scheme is that Plaintiffs and other similarly situated delivery drivers were, and are, routinely denied payment of minimum wages, overtime and meal/rest period premium wages, repayment of business related expenses, and other payments provided by California law.  Defendant also deprives Plaintiffs and Class Members of

the protection of workers' compensation benefits in the event of injury, as well as other benefits to which they are entitled. Moreover, because of its misclassification, Defendant fail to properly pay California taxes it owes. These actions illegally reduce Defendant's costs of doing business, and constitute unlawful and unfair business practices in violation of California's Unfair Competition Law.

## II.    JURISDICTION AND VENUE

4.    This Court has Subject matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

5.    Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

6.    Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship from Defendant.

7.    Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's employees, including the Plaintiffs in this case, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis.

8.    The court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 because the state law claims and the federal claim are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

9.    The court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

10.    The court has personal jurisdiction over Defendant because Defendant conduct business within the state of California, employ individuals within the state of California, and are registered with the California Department of the Secretary of State.

11.     Venue as to Defendant OnTrac is also proper in this judicial district because upon information and belief , the obligations and liabilities giving rise to this lawsuit occurred in part in the County of Sonoma and Defendant OnTrac operates a facility in Sonoma County and others throughout California.

## III.    PARTIES

12.     Plaintiff Morgan is a resident of California and, during the time period relevant to this Complaint, was employed by OnTrac, through its Regional Service Provider, as a delivery driver within the State of California, based out of OnTrac's warehouse and distribution center in Sonoma County. As a delivery truck driver employed by Defendant, Plaintiff's work required the performance of manual labor consisting of loading Defendant's trucks and transporting goods solely within California. She was paid only a flat day rate ranging from $200 to $230 per day, not paid separately for manual labor (as opposed to delivering), and not paid for meal/rest breaks, and was not provided reimbursement of business related expenses.

13.     Plaintiff Khan is a resident of California and, during the time period relevant to this Complaint, was employed by OnTrac, through its Regional Service Provider, as a delivery driver within the State of California, based out of OnTrac's warehouse and distribution center in San Joaquin County. As a delivery truck driver employed by Defendant, Plaintiff's work required the performance of manual labor consisting of loading Defendant's trucks and transporting goods solely within California. He was paid only a piece rate of $1.25 per delivery up to $3.50 per delivery (for Sunday deliveries), not paid at all for manual labor, not paid for meal/rest breaks, and was not provided reimbursement of business related expenses.

14.     Defendant Express Messenger Systems, Inc., *dba* OnTrac, the Delaware Corporation registered and doing business in California, operates warehouses, terminals, and distribution facilities in California out of which Plaintiffs and the Class were employed, including in Petaluma, California in Sonoma County.  Defendant lists its principal office in Chandler, Arizona.

IV.    **GENERAL ALLEGATIONS**

A.    **Plaintiffs and the Class Are Employed by OnTrac**

15.    OnTrac market itself as an affordable alternative for parcel logistics, working with business and retailers to ship small-packages to consumers within California.  OnTrac moves packages from its customers to its local warehouses.  Once at an OnTrac warehouse, the package is either moved to a local United States Postal Service office or provided to a local OnTrac driver for delivery. When OnTrac delivers the package directly to the addressee, OnTrac engages local delivery drivers as independent contractors, or as independent contractors of its Regional Service Providers.

16.    It is this "last mile" portion of the delivery, which is performed by Plaintiffs and other Class Members, occurs completely within the State of California.  Whether Plaintiffs and other Class Members are paid directly by OnTrac or its Regional Service Providers, they are employees of OnTrac.

17.    Delivery drivers for OnTrac drive vehicles weighing less than 10,000 pounds while carrying out their job duties.

1.    Plaintiffs and Class Members are employed by OnTrac

18.    Whether Plaintiffs and Class Members were engaged by OnTrac or a Regional Service Providers to make the final delivery, they were employed or jointly employed by OnTrac. Industrial Welfare Commission Wage Order ("IWC Wage Order") No. 9, subd. 2(G), defines "employer" as "any person … who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person."

19.    "[T]he language of the IWC's 'employer' definition has the obvious utility of reaching situations in which multiple entities control different aspects of the employment relationship, as when one entity, which hires and pays workers, places them with other entities that supervise the work. Consistently with this observation, the IWC has explained its decision to include the language in one modern wage order as 'specifically intended to include both temporary employment agencies and employers who contract with such agencies to obtain

employees within the definition of 'employer.'"" *Martinez v. Combs*, 49 Cal. 4th 35, 59, 231 P.3d 259, 274 (2010) (citation omitted).

20.    Upon information and belief, OnTrac's Regional Service Providers directly contract with thousands of delivery drivers in California in the last four years, including Plaintiff, and assigned or placed them to work for OnTrac, who supervises the Plaintiff's and other Class Members' work.  Additionally, OnTrac directly contract with delivery drivers in California.

21.    OnTrac directly or indirectly, exercises control over their wages, hours, or working conditions of Plaintiffs and other Class Members, had power to cause Plaintiffs and other Class Members to work or the power to prevent Plaintiffs and other Class Members from working, and had the general right to control the relevant day-to-day aspects of the workplace behavior of Plaintiffs and other Class Members.

22.    Plaintiffs and other Class Members working under Regional Service Providers have worked out of OnTrac-owned and managed warehouses throughout the State, where OnTrac managers, package handlers, and other OnTrac employees oversee and manage the package delivery operations.

23.    The services rendered by Plaintiffs and other Class Members working under Regional Service Providers are an integral part of OnTrac's business because OnTrac is in the business of package delivery, and Plaintiffs and other delivery drivers physically deliver packages to OnTrac's customers on OnTrac's behalf.

24.    OnTrac provides driver applicants to its Regional Service Providers to aid in the hiring drivers, and sets standards that a driver must meet.

25.    Plaintiffs and other Class Members, working under Regional Service Providers, have to perform their delivery work on strict and predictable schedules pursuant to OnTrac's time sensitive delivery requirements. The drivers' schedules are dictated by the volume of packages that OnTrac requires be delivered each day on their routes. Neither these drivers, nor the intermediary Regional Service Providers who they work under, have any control over the volume of package pickup and delivery work that OnTrac assigns the drivers.

26.    OnTrac micromanages the manner in which Plaintiffs] and other Class Members

working under Regional Service Providers perform their work. Some of this micromanaging is performed directly by OnTrac managers, and some is performed by the Regional Service Providers, pursuant to standards and requirements established by OnTrac (and enforced by OnTrac).

27.    OnTrac requires Plaintiffs and Class Members to wear a uniform bearing OnTrac's logos and color scheme and to maintain personal appearance standards established by OnTrac.

28.    The vehicles driven by Plaintiffs and the Class Members bear the OnTrac logo.

29.    OnTrac requires Plaintiffs and Class Members to transport the freight tendered to them by OnTrac at an OnTrac warehouse to point of destination within deadlines established between OnTrac and OnTrac's client.

30.    OnTrac also requires Plaintiffs and Class Members to make every reasonable effort to perform freight transportation services in a prompt, competent and diligent manner consistent with OnTrac's standards of customer service and satisfaction, to conduct all business in a professional manner with proper decorum at all times, and to cooperate with OnTrac employees, customers, and other drivers. Further, Plaintiffs and the Class Members are required to adhere to customer service expectations that must be met in servicing OnTrac's transportation needs.

31.    Plaintiffs and Class Members are required to use mobile devices approved by OnTrac for dispatch and tracking purposes.  These mobile devices track every movement on Plaintiffs' and Class Members' vehicle.  OnTrac requires the drivers to scan all assigned packages with these mobile devices upon loading each morning and upon delivery.

32.    Customer comments and complaints regarding the Plaintiffs' and Class Members' job performance are made directly to OnTrac, who uses its own discretion on what action to take. OnTrac has the authority to require its Regional Service Providers to terminate or reassign drivers working under them if OnTrac believes they should not represent OnTrac.

33.    Accordingly, whether a driver works was contracted directly by OnTrac, or by its Regional Service Providers, their work responsibilities, and procedures they have been required to follow, have not differed in any material way.

1

2. <u>Plaintiffs and the Collective were employed by OnTrac</u>

2      34.    In addition to the above facts, Plaintiffs and the putative Collective were also

3  "employees" under federal labor and state laws.

4      35.    As briefly summarized in paragraphs (a) – (e) below, the economic realities

5  demonstrate that Plaintiffs and other deliver drivers were employees of Defendant, and not

6  independent contractors.

7            a.  Defendant closely monitored, directed, and controlled the day-to-day work of

8                Plaintiffs and other delivery drivers.

9            b.  By virtue of the fact that Plaintiffs and other delivery drivers drove for OnTrac

10               only, OnTrac controlled their opportunity for profit or loss.  Plaintiffs and other

11               delivery drivers did not exercise managerial duties in performing their job duties.

12           c.  The work performed by Plaintiffs and other delivery drivers did not require

13               specialized or advanced skills, nor did it require a specialized degree.

14           d.  Plaintiffs and other delivery drivers typically worked full-time and exclusively for

15               OnTrac as delivery drivers, performing deliveries for OnTrac's customers while

16               wearing OnTrac uniforms and driving a vehicle bearing the logo of Ontrac.

17           e.  The services rendered by Plaintiffs and other deliver drivers are an integral part of

18               Ontrac's business because Ontrac is in the business of supplying consumers and

19               businesses with package delivery services.

20     36.    OnTrac delivery drivers regularly work over 40 hours per week and drive routes

21  assigned to them by OnTrac and deliver packages for OnTrac.

22     37.    The U.S. Department of Labor (DOL) is aware of the problem of misclassification

23  of workers as independent contractors and has addressed the matter on its website.  Specifically,

24  the DOL has stated "[m]isclassified employees often are denied access to critical benefits and

25  protections they are entitled to by law, such as minimum wage, overtime compensation, family

26  and medical leave, unemployment insurance, and safe workplaces.  Employee misclassification

27  generates substantial losses to the federal governments and state governments in the form of

28  lower tax revenues, as well as to state unemployment insurance and workers' compensation

1    funds." *See*, https://www.dol.gov/agencies/whd/flsa/misclassification (last visited Jan. 5, 2020).

2              3.    OnTrac misclassifies its delivery drivers

3        38.    Plaintiffs and other Class Members are classified as independent contractors by

4    OnTrac and its Regional Service Providers.  Under the Labor Code and applicable IWC Wage

5    Order, a worker in California cannot be an independent contractor unless the hirer can prove: (A)

6    that the worker is free from the control and direction of the hirer in connection with the

7    performance of the work, both under the contract for the performance of such work and in fact;

8    and, (B) that the worker performs work that is outside the usual course of the hiring entity's

9    business; and (C) that the worker is customarily engaged in an independently established trade,

10   occupation, or business of the same nature as the work performed for the hiring entity.  OnTrac

11   cannot meet the above requirements.  Therefore, OnTrac misclassifies Plaintiffs and Class

12   Members as independent contractors instead of employees.

13       39.    Similarly, 29 U.S.C. 203(d) defines an employer as "any person acting directly or

14   indirectly in the interest of an employer in relation to an employee" and 29 U.S.C. 203(e) defines

15   employee as "any individual employed by an employer."  Furthermore, the statutory definitions

16   regarding employment status are necessarily broad to effectuate the remedial purpose of the

17   FLSA.  *See*, *United States v. Rosenwasser*, 323 U.S. 360, 363, 65 S.Ct. 295, 296-97 (1945). The

18   Supreme Court has long recognized that two or more entities may constitute joint employers for

19   purposes of the FLSA.  *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 724-25 (1947); *Falk v.*

20   *Brennan*, 414 U.S. 190 (1973)

21       40.    In performing these duties, Plaintiffs did not utilize any independent discretion,

22   judgment, or management decisions with respect to matters of significance. To the contrary,

23   Plaintiffs as delivery drivers, along with the other similarly situated drivers employed by OnTrac

24   and Regional Service Providers, was to provide the transportation and delivery of goods in

25   accordance with the management decisions and business policies established by OnTrac.

26       41.    Also noted above, OnTrac retains and exercises significant control over the details

27   of Plaintiffs and Class Members' schedules, routes, deliveries, the manner and means of how the

28   delivery work is performed, and all necessary aspects of their working conditions. Among other

things, OnTrac holds Plaintiffs and Class Members to strict standards of service pervasive throughout the entire delivery process and requires them to adhere to all "customer requirements" and to meet "customer service" standards regarding OnTrac customers.

42.    The service provided by Plaintiffs and Class Members, delivering packages, is not an independently established trade such as a plumber or electrician. Rather, they are integral and central to the operation of OnTrac's core business. OnTrac provides transportation services. Plaintiffs and Class Members perform these services for OnTrac: they are hired to transport and deliver packages within California based on times, locations, and for fees determined by OnTrac.

43.    As a result, Plaintiffs and other Class Members were entitled to be paid wages for all hours worked, reimbursed for all business related expenses, and to be provided accurate wage statements and meal and rest periods as required by California law.

44.    Additionally, Plaintiffs and other Collective members were entitled to overtime wages under the FLSA.

**B.    Defendant Failed to Pay Plaintiffs and the Class for All Hours Worked**

45.    Industrial Welfare Commission Wage Order No. 9-2001 provides: "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." "Hours worked" is defined under the Wage Orders as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Plaintiffs and Class Members are entitled to separate hourly compensation for time spent for performing other non-driving tasks, which were non-productive and directed by Defendant during their work shifts.

46.    Plaintiffs and other Class Members were paid by piece-rate and/or a day-rate while they were employed as delivery drivers for Defendant, without regard to the real-time hours worked.  Those paid on a piece rate basis were not provided, through Defendant's compensation system, with minimum wages for all their non-production work time when they were not driving and incurring miles for pay purposes, including for vehicle inspections, loading and unloading,

1   and other non-driving tasks they were required to perform in connection with their various loads

2   driven.  Indeed, Plaintiffs and Class Members often have to spend approximately two hours in the

3   warehouse, loading their vehicles, before they can deliver any packages.

4        47.    Similarly, Defendant failed to provide all the legally required compensation or

5   minimum wage to the Plaintiffs and other Class Members for each hour worked as required by

6   the Labor Code.  Defendant did not have a system to ensure that those employees paid by a piece-

7   rate and/or a day-rate received at least minimum wages for all hours worked.  Defendant also did

8   not have a policy or practice to provide minimum wages or compensation for non-production

9   work time. As a result, Defendant's failure to provide the Plaintiffs and Class Members with all

10  the legally required compensation and will be evidenced by OnTrac's business records, or lack

11  thereof.

12      **C.**    **Defendant Failed to Provide Meal and Rest Periods**

13       48.    Defendant systematically denies Plaintiffs and Class Members lawful meal periods

14  for shift that lasted longer than five hours. Additionally, to the extent Plaintiffs and the Class

15  working a shift that was greater than ten hours, Defendant's uniform policies similarly prevented

16  Plaintiffs and the Class from taking a second meal break.  And even when Plaintiffs and the Class

17  were able to take a meal period, it was often interrupted by work demands.

18       49.    In addition, during the relevant time period, Defendant has consistently failed to

19  authorize and permit Plaintiffs and Class Members to take paid, off-duty rest breaks of not less

20  than ten minutes for every work period of four (4) or more consecutive hours (or major factor

21  thereof).

22       50.    Defendant did not pay Plaintiffs and Class Members one hour of premium pay for

23  each day on which requisite rest and/or meal breaks were not provided or were deficiently

24  provided.   Additionally, Defendant failed to pay Plaintiffs and Class Members for their

25  nonproductive time during their off-duty rest periods.

26       51.    Defendant failed to provide all the legally required unpaid, off-duty meal periods

27  and all the legally required paid, off-duty rest periods to the Plaintiffs and other Class Members as

28  required by the applicable Wage Order and Labor Code. OnTrac did not have a policy or practice

which provided or recorded all the legally required unpaid, off-duty meal periods and all the legally required paid, off-duty rest periods to the Plaintiffs and other Class Members. As a result, Defendant's failure to provide the Plaintiffs and Class Members with all the legally required off-duty, unpaid meal periods and all the legally required off-duty, paid rest periods is and will be evidenced by OnTrac's business records, or lack thereof.

**D.  Defendant Failed to Pay Plaintiffs and the Class Overtime Payments**

52.  Plaintiffs and Class Members are non-exempt employees pursuant to the applicable IWC Wage Order.  Plaintiffs and Class Members are not exempt from California's wage and hour laws as drivers, as they are not involve involved in interstate commerce, and do not drive trucks that weight over 10,000 pounds.  Instead, Plaintiffs and Class Members drove their own personal, delivery vehicles with an OnTrac logo attached.

53.  Plaintiffs and Class Members regularly worked over ten-hour days, and over forty hours a workweek, to deliver the packages and complete the routes assigned to them by Defendant.  Despite this, Plaintiffs and Class Members were not paid overtime premium wages for any all hours worked in excess of eight up in any workday, and for any work on the seventh consecutive day of work in a workweek.

54.  Labor Code section 226.2 expressly states in the opening paragraph that that piece-rate compensation schemes "shall not be construed to limit or alter minimum wage or overtime compensation requirements, or the obligation to compensate employees for all hours worked under any other statute or local ordinance."

55.  Accordingly, Plaintiffs and Class Members are entitled to an overtime premium as a multiple of their regular rate of pay.  Plaintiffs' and Class Members' regular rate of pay should be determined by dividing all compensation received in a workweek (including compensation for rest periods) by the number of hours worked during that workweek.

56.  Defendant failed to provide all the legally required overtime compensation to the Plaintiffs and other Class Members as required by the Labor Code. OnTrac did not have a policy or practice which provided overtime compensation or recorded the overtime hours worked. As a result, Defendant's failure to provide the Plaintiffs and Class Members with all the legally

required overtime compensation and will be evidenced by OnTrac's business records, or lack thereof.

**E.      Defendant Failed to Reimburse Business Expenses**

57.      Furthermore, Defendant has unlawfully failed to indemnify the Plaintiffs and other Class Members for employment related expenses, including the costs of providing the leased vehicles; all operation costs associated with the vehicle (including fuel, maintenance, repair, cleaning, and licensing); liability and other insurance; cellular telephone costs associated with employment related communications; and miscellaneous employment related equipment, such as dollies.

58.      Labor Code, section 2802, requires employers to reimburse employees, "for all necessary expenditures or losses incurred by the employee" while completing work duties.  The employee must receive full reimbursement for expenses incurred.

59.      Defendant failed to reimburse Plaintiffs and Class Members for all necessary employment expenditures or losses as required by the Labor Code. OnTrac did not have a policy or practice that provided for reimburse of expenditures or losses. As a result, Defendant's failure to provide the Plaintiffs and Class Members with all the legally required reimbursement and will be evidenced by OnTrac's business records, or lack thereof.

**F.      Defendant Failed to Provide Wage Statements**

60.      During the relevant time period, Defendant has also consistently failed to provide Plaintiffs and Class Members with timely, accurate, and itemized wage statements, in writing, as required by the Labor Code, section 226. More specifically, Defendant also failed to provide the Plaintiffs and Class Members with complete and accurate wage statements, as those provided failed to show, among other things, the correct hours worked, wages owed for time worked (including overtime and non-productive work time), or basis for the piece-rate payments.

61.      Labor Code, section 226, provides that every employer shall furnish each of its employees with an accurate itemized wage statement in writing showing, among other things, gross wages earned and all applicable hourly rates in effect during the pay period and the corresponding amount of time worked at each hourly rate, as well as the number of piece-rate

units earned and any applicable piece rate for employees who were paid on a piece-rate basis.

62.    As a result, Defendant provided Plaintiffs and the other members of the Class with wage statements that were inaccurate and which systematically violated the Labor Code. This failure was injurious to Plaintiffs and the Class as Defendant's employees could not determine the their wages owed from promptly and easily determine from the wage statement alone. Accordingly, Defendant fosters an environment where Plaintiffs and Class Members are not being paid all the wages owed to them because of the difficulty and expense involved in reconstructing their pay records and forcing Plaintiffs and Class Members to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked.

63.    OnTrac knew that it was not providing its delivery drivers the information required by section 226(a).  OnTrac did not have a policy or practice to ensure that it was in compliance with section 226.  Accordingly, Plaintiffs and the Class seek penalties and all other relief available to them and other Class Members under California law.

## CLASS ALLEGATIONS

64.    Plaintiffs bring this class action on behalf of herself and all others similarly situated pursuant to Rule 23(a) and (b).  Plaintiffs seek to represent a Class (or "the Class" or "Class Members") defined as follows:

> All individuals who delivered packages on behalf of OnTrac, solely within California, using vehicles under 10,000 pounds during the period of four years prior to the filing of this lawsuit and ending on a date as determined by the Court.

Excluded from the Class are all legal entities, Defendant and any person, firm, trust, corporation, or other entity related to or affiliated with Defendant, as well as any judge, justice or judicial officer presiding over this matter and members of their immediate families and judicial staff.

65.    Plaintiffs reserve the right to amend or modify the class description with greater particularity. To the extent equitable tolling operates to toll claims by the Class against Defendant, of example Emergency Rule No. 9, the Class Period should be adjusted accordingly.

66.    While the exact number of Class members is unknown to Plaintiffs at this time, and will be ascertained through appropriate discovery, Plaintiffs are informed and believes that

there are thousands of similarly situated Class Members in California. The number of individuals who comprise the Class is so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action, rather than in individual actions, will benefit both the parties and the courts.

67.    Plaintiff's claims are typical of the claims of the other members of the Class. All members of the Class have been and/or continue to be similarly affected by Defendant's wrongful conduct as complained of herein, in violation of California law. Plaintiffs are unaware of any interests that conflict with or are antagonistic to the interests of the Class.

68.    Plaintiffs will fairly and adequately protect the Class Members' interests and has retained counsel competent and experienced in class action lawsuits and complex litigation. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs are aware of her duties and responsibilities to the Class.

69.    Plaintiffs share the same interests as the other Class members and will be entitled under the Labor Code to unpaid overtime compensation, attorneys' fees, costs and lost interest owed to her under nearly identical factual and legal standards as the remainder of the putative class.

70.    Defendant, as a matter of company policy, practice and procedure, and in violation of the applicable Labor Code, IWC Wage Order requirements, and the applicable provisions of California law, intentionally, knowingly, and willfully, engaged in a practice whereby Defendant failed to correctly calculate compensation for the time worked by the Plaintiffs and the other members of the Class, even though Defendant enjoyed the benefit of this work, required employees to perform this work and permitted or suffered to permit this work. OnTrac has uniformly denied these Class Members wages to which they are entitled, and failed to provide meal periods or authorize and permit rest periods, in order to unfairly cheat the competition and unlawfully profit.

71.    Defendant has acted with respect to the Class in a manner generally applicable to each Class member. Common questions of law and fact exist as to all Class members and predominate over any questions wholly affecting individual Class members. There is a well-

defined community of interest in the questions of law and fact involved in the action, which affect all Class members. Among the questions of law and fact common to the Class are:

a.  Whether Defendant engaged in a policy or practice of failing to pay each Class Member overtime compensation for all overtime hours worked;

b.  Whether Defendant engaged in a policy or practice of failing to pay each Class member minimum and regular wages for all compensable time;

c.  Whether Defendant violated Labor Code sections 201, 202, and 203 by willfully failing to pay all wages and compensation due each Class member who resigned or who was discharged;

d.  Whether Defendant violated Labor Code section 226 by willfully failing to provide accurate itemized wage statements showing the number of hours worked by each Class member and the corresponding hourly rate;

e.  Whether Defendant violated Labor Code section 1174 by failing to maintain accurate records of hours worked and wages paid to Class members;

f.  Whether Defendant failed and/or refused to provide each Class member meal periods, or one hour's wages in lieu thereof, to which they were entitled pursuant to the Labor Code and IWC Wage Order;

g.  Whether Defendant failed and/or refused to provide each Class member rest periods, or one hour's wages in lieu thereof, to which they were entitled pursuant to the Labor Code and IWC Wage Order;

h.  Whether Defendant was unjustly enriched by the work and services performed by Class members without appropriate compensation;

i.  Whether Defendant engaged in unfair business practices in violation of Business and Professions Code section 17200 *et seq.*;

j.  Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating California state law; and

k.  Whether Defendant should be enjoined from continuing their wrongful conduct.

72.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Class members to individually redress the wrongs done to them. There will be no difficulty in managing this action as a class action.

73.    Defendant has acted on grounds generally applicable to the entire Class with

CLASS ACTION COMPLAINT

respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## COLLECTIVE ACTION ALLEGATIONS

74.    Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former delivery drivers who worked for OnTrac at*
> *any time from January 5, 2018 to a date specified by the Court.*

(hereinafter referred to as the "FLSA Collective").  Plaintiffs reserve the right to amend this definition if necessary.

75.    OnTrac is liable under the FLSA for, inter alia, failing to properly compensate Plaintiffs and others similarly situated.

76.    Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outstide sales persons.

77.    Consistent with Defendant's policies and practice, Plaintiffs and the proposed FLSA Collective were not paid for regular wages and all premium overtime compensation when they worked beyond 40 hours in a workweek.

78.    All of the work Plaintiffs and the proposed FLSA Collective work performed was by Defendant, and/or Defendant was aware of all of the work the Plaintiffs and the proposed FLSA Collective performed.

79.    As part of their regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

a.    Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, for all premium overtime wages for hours worked in excess of forty (40) hours per workweek;

- 16 -

b.  Willfully misclassifying their employees, including Plaintiffs and the members of the FLSA Collective, as independent contractors, thereby depriving them of certain employment benefits;

c.  Willfully failing to provide their employees, including Plaintiffs and the FLSA Collective, with rest breaks and meal periods; and

d.  Willfully failing to reasonably reimburse their employees, including Plaintiffs and the FLSA Collective, for reasonably necessary business expenses.

80.  Defendant is aware, or should have been aware, that federal law required it to pay Plaintiffs and the proposed FLSA Collective members for all hours work and an overtime premium for all hours worked in excess of forty (40) per workweek.

81.  Defendant's unlawful conduct is widespread, repeated, and consistent.

82.  A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

**FIRST CAUSE OF ACTION**
**VIOLATION OF LABOR CODE § 510 -**
**FAILURE TO PAY MINIMUM WAGES**

83.  Plaintiffs re-allege and incorporate all preceding paragraphs, as though set forth in full herein.

84.  Defendant failed to pay Class Members the minimum wages for all hours worked. Defendant had a consistent policy of not maintaining accurate records of all hours worked and of failing to pay Class Members for all hours worked. Plaintiffs and the other Class Members bring a claim for Defendant's willful and intentional violations of the Labor Code and the Industrial Welfare Commission requirements for Defendant's failure to accurately calculate and pay minimum wages to Plaintiffs and Class Members.

85.  Labor Code, section 1197, states: "[t]he minimum wage for employees fixed by

the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful."

86.    The minimum wage provisions of Labor Code are enforceable by private civil action pursuant to Labor Code § 1194(a), which establishes an employee's right to recover unpaid wages, including minimum wage compensation and interest thereon, together with the costs of suit, as follows: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees and costs of suit."

87.    As described in Labor Code §§ 1185 and 1194.2, any action for wages incorporates the applicable IWC Wage Order.

88.    Labor Code § 1194.2 also provides for the following remedies: "In any action under Section 1194 . . . to recover wages because of the payment of a wage less than the minimum wages fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."

89.    Additionally, Labor Code § 226.2(a)(1) states that, for "employees compensated on a piece-rate basis during a pay period, . . . Employees shall be compensated for rest and recovery periods and all other nonproductive time separate from any piece-rate compensation." OnTrac failed to do so for Plaintiffs and the Class Members when they were paid on a piece rate basis, including by failing to comply with the other provisions of Labor Code § 226.2 addressing the requirements for compensating employees for rest and recovery periods and other non-productive time separate from piece rate compensation. Plaintiffs and the Class Members were paid on a piece rate basis. However, Defendant failed to separately pay Plaintiffs and the Class Members for their rest periods in violation of Labor Code § 226.2 and California minimum wage laws, discussed above.

90.    Defendant's uniform pattern of unlawful wage and hour practices manifested, without limitation, applicable to the Class as a whole, as a result of implementing a uniform

1    policy and practice that denied accurate compensation to Plaintiffs and the other members of the

2    Class in regard to minimum wage pay.

3        91.    In committing these violations of the Labor Code, Defendant inaccurately

4    calculated the correct time worked and consequently underpaid the actual time worked, along

5    with failing to pay for all piece rate units earned by Plaintiffs and other members of the Class.

6    Defendant acted in an illegal attempt to avoid the payment of all earned wages, and other benefits

7    in violation of the Labor Code, the Industrial Welfare Commission requirements and other

8    applicable laws and regulations. As a result of these violations, Defendant also failed to timely

9    pay all wages earned in accordance with Labor Code § 1194.

10       92.    In addition to restitution for all unpaid wages, pursuant to Labor Code § 1197.1,

11   Plaintiffs and Class Members are entitled to recover a penalty of $100.00 for the initial failure to

12   timely pay each employee minimum wages, and $250.00 for each subsequent failure to pay each

13   employee minimum wages.

14       93.    By virtue of Defendant's unlawful failure to accurately pay all earned

15   compensation to Plaintiffs and the other  Members of the Class for the true time they worked and

16   piece rate units they earned, Plaintiffs and the other members of the Class have suffered and will

17   continue to suffer an economic injury in amounts which are presently unknown to them and

18   which will be ascertained according to proof at trial.

19       94.    Defendant knew or should have known that Plaintiffs and the other members of the

20   Class were under-compensated for their time worked and were paid less than all wages they

21   earned. Defendant systematically elected, either through intentional malfeasance or gross

22   nonfeasance, to not pay employees for their labor as a matter of uniform company policy, practice

23   and procedure, and Defendant perpetrated this systematic scheme by refusing to pay Plaintiffs

24   and the other Members of the Class the correct minimum wages for their time worked and for all

25   piece rate units earned.

26   / / /

27   / / /

28   / / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SECOND CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 510, 1194, 1198 AND IWC WAGE ORDER - FAILURE TO PAY OVERTIME**

95.    Plaintiffs re-allege and incorporate all preceding paragraphs, as though set forth in full herein.

96.    At all relevant times, Defendant regularly and consistently maintained policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to their employees, including overtime compensation.

97.    At all relevant times, Plaintiffs and the Class regularly performed non-exempt work and were thus subject to the overtime requirements of California law.

98.    Labor Code §§ 510, 1198 and IWC Wage Order No. 9, provide that: (a) employees are entitled to compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of eight hours in a workday up to 12 hours in a workday, in excess of 40 hours in a workweek, and for the first eight hours of work on the seventh consecutive day of a workweek; and (b) employees are entitled to compensation at the rate of twice their regular rate of pay for all hours worked in excess of 12 hours in a workday, and in excess of eight hours on the seventh consecutive day of work in a workweek.

99.    At all relevant times, Plaintiffs and the Class regularly worked in excess of eight hours in a workday and forty hours in a workweek.  Defendant failed and refused to pay overtime premiums to Plaintiffs and the Class members for their overtime hours worked. Instead, Defendant paid Plaintiffs and Class Members on a piece-rate or a daily basis, without regard to the number of hours worked.

100.    Defendant intentionally, maliciously, fraudulently and with the intent to deprive Plaintiffs and the Class of their ability to earn a living so as to reduce their labor costs, knowingly and willfully implemented a scheme or artifice to avoid paying Plaintiffs and other Class members overtime wages for all overtime hours worked.

101.    Plaintiffs and the Class were entitled to receive overtime compensation at their lawful premium rates of pay for each overtime hour that they worked. Defendant's failure to pay

lawful premium overtime wages, as alleged above, was a willful violation of Labor Code §§ 510, 1198, and IWC Wage Order.

102.    Plaintiffs demand payment of the unpaid balance of the full amount of wages due for unpaid time worked, as well as overtime premiums owing, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2 as a result of Defendant's failure to pay overtime premiums for all overtime hours worked, as is required under California law.

### THIRD CAUSE OF ACTION
### VIOLATION OF CALIFORNIA LABOR CODE § 226.7 AND AND IWC WAGE ORDER- FAILURE TO PROVIDE MEAL PERIOD

103.    Plaintiffs re-allege and incorporate all preceding paragraphs, as though set forth in full herein.

104.    Plaintiffs and the Class regularly worked shifts greater than five (5) hours and greater than ten (10) hours. Pursuant to Labor Code § 512 an employer may not employ an employee for a shift of more than five (5) hours without providing him or her with a meal period of not less than thirty (30) minutes or for a shift of more than ten (10) hours without providing him or her with a second meal period of not less than thirty (30) minutes.

105.    Defendant failed to provide Employees with meal periods as required under the Labor Code, and Plaintiffs and the Class members consistently worked shifts of over five (5) or ten (10) hours in duration which entitled them to receive timely and uninterrupted meal period(s) per work shift.  Defendant's uniform policies and practices systematically denied the Class Members lawful meal periods by failing to relieve them of all work duties, as required under California law. Additionally, to the extent Plaintiffs and the Class were provided the opportunity to take a second meal period when working a shift of ten (10) hours, Defendant did not relieve them of all work duties.

106.    Labor Code § 226.7 and the applicable IWC Wage Order also provide that, if an employer fails to provide an employee a meal period, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided. Defendant failed to compensate Plaintiffs and Class Members for each

1    meal period not provided or inadequately provided, as required under Labor Code § 226.7.

2    107.    Pursuant to Labor Code § 226.7 and the applicable IWC Wage Orders, Plaintiffs

3    and Class Members are entitled to damages in an amount equal to one (1) hour of wages at their

4    effective hourly rates of pay for each meal period not provided or deficiently provided, a sum to

5    be proven at trial, as well as the assessment of any statutory penalties against the OnTrac, and

6    each of them, in a sum as provided by the Labor Code and other statutes.

7                    **FOURTH CAUSE OF ACTION**
       **VIOLATION OF CALIFORNIA LABOR CODE § 226.7 AND AND IWC WAGE**
8                  **ORDER- FAILURE TO PROVIDE REST-BREAK**

9    108.    Plaintiffs re-allege and incorporate all preceding paragraphs, as though set forth in

10   full herein.

11   109.    Labor Code §§ 226.7 and the applicable IWC Wage Order provide that employers

12   must authorize and permit all employees to take rest periods at the rate of ten (10) minutes net

13   rest time per four (4) work hours or major fraction thereof.

14   110.    Labor Code §§ 226.7 and the applicable IWC Wage Order provide that if an

15   employer fails to provide an employee rest period in accordance with this section, the employer

16   shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for

17   each workday that the rest period is not provided.

18   111.    Plaintiffs and Class Members consistently worked consecutive four (4) hour

19   periods during their work shifts. Pursuant to the Labor Code and the applicable IWC Wage Order.

20   Defendant failed to provide Employees with timely rest breaks of not less than ten (10) minutes

21   for each consecutive four (4) hour shift.  Defendant failed to implement policies and practices

22   which accounted for and authorized and permitted Plaintiffs and the Class Members to timely

23   take all required rest periods under California law. Defendant must pay rest period wages and

24   penalty premium wages as required under Labor Code § 226.7. Defendant, and each of them,

25   have therefore intentionally and improperly denied rest periods to Plaintiffs and the Class

26   Members in violation of Labor Code §§ 226.7 and 512 and the applicable IWC Wage Order.

27   112.    Pursuant to <u>Labor Code</u> § 226.7 and paragraph 12 of the applicable IWC Wage

28   Order, the Class Members are entitled to damages in an amount equal to one (1) hour of wages at

their effective hourly rates of pay for each day worked without the required rest breaks, a sum to be proven at trial, as well as the assessment of any statutory penalties against Defendant, and each of them, in a sum as provided by the Labor Code and/or other statutes.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF LABOR CODE §§ 226(a) AND 226.2 -**
**INACCURATE WAGE STATEMENTS**

113.    Plaintiffs re-allege and incorporate all preceding paragraphs, as though set forth in full herein.

114.    Labor Code § 226(a) requires an employer to furnish each of his or her employees with an accurate, itemized statement in writing showing the gross and net earnings, total hours worked, and the corresponding number of hours worked at each hourly rate. These statements must be appended to the detachable part of the check, draft, voucher, or whatever else serves to pay the employee's wages. If wages are paid by cash or personal check, these statements may be given to the employee separately from the payment of wages. In either case, the employer must give the employee these statements twice a month or each time wages are paid.

115.    Defendant failed to provide Plaintiffs and Class Members with accurate itemized wage statements in writing, as required by the Labor Code. Specifically, the wage statements given to Plaintiffs and Class Members by Defendant failed to accurately account for wages, hours worked, pieces earned, hourly rates and piece rates, and did not provide pay for non-productive time and premium pay for deficient meal periods and rest breaks, all of which Defendant knew or reasonably should have known were owed to Plaintiffs and Class Members, as alleged hereinabove.

116.    Labor Code § 226.2(a)(2)(A)-(B) further instructs that: "The itemized statement required by subdivision (a) of Section 226 shall, in addition to the other items specified in that subdivision, separately state the following, to which the provisions of Section 226 shall also be applicable: (A) The total hours of compensable rest and recovery periods, the rate of compensation, and the gross wages paid for those periods during the pay period.  (B) Except for employers paying compensation for other nonproductive time in accordance with paragraph (7), the total hours of other nonproductive time, as determined under paragraph (5), the rate of

compensation, and the gross wages paid for that time during the pay period." Defendant failed to issue accurate itemized wage statements to Plaintiffs and Class Members when they were paid on a piece rate basis because the wage statements failed to comply with the requirements of Labor Code § 226.2, in addition to Labor Code § 226.

117.    As a direct and proximate cause of Defendant's violation of Labor Code § 226(a), Plaintiffs and Class Members suffered injuries, including among other things confusion over whether they received all wages owed them, the difficulty and expense involved in reconstructing pay records, and forcing them to make mathematical computations to analyze whether the wages paid in fact compensated them correctly for all hours worked and all pieces earned.

118.    Plaintiffs and the Class Members suffered injury as a result of Defendant's knowing and intentional failure to provide them with the wage and hour statements, as required by law, and are presumed to have suffered injury and entitled to penalties under Labor Code § 226(e). Plaintiffs and the Class Members are entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000). They are also entitled to an award of costs and reasonable attorneys' fees.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF LABOR CODE § 2802 -**
**REIMBURSEMENT OF NECESSARY EXPENDITURES**

119.    Plaintiffs re-allege and incorporate all preceding paragraphs as though set forth in full herein.

120.    Labor Code §§ 201 and 202 require employers to pay their employees all wages due within the time specified by law. Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of 30 days of wages.

121.    Plaintiffs and Class Members who ceased employment with Defendant are entitled to unpaid compensation, but to date have not received such compensation.

122.    More than 30 days have passed since certain Plaintiffs and Class Members left Defendant's employ.

123.    As a consequence of Defendant's willful conduct in not paying regular, minimum and/or overtime compensation for all hours worked, the Class members whose employment ended during the class period are entitled to 30 days' wages under Labor Code § 203, together with interest thereon and attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
### VIOLATION OF LABOR CODE § 2802 -
### REIMBURSEMENT OF NECESSARY EXPENDITURES

124.    Plaintiffs re-allege and incorporate all preceding paragraphs as though set forth in full herein.

125.    Under Labor Code § 2802(a) an employer must indemnify its employees for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer.

126.    Plaintiffs and Class Members incurred necessary expenditures in the performance of their job duties for Defendant, namely, the cost of fuel, vehicle maintenance, necessary repairs, and the cost of cellular telephone service, which Plaintiffs and the Class Members were required to purchase in order to execute their duties under Defendant's employ. From four (4) years prior to the original filing of this lawsuit and continuing to the present, Defendant consistently failed to reimburse Plaintiffs and Class Members for these necessarily incurred business expenses.

127.    As a result of the unlawful acts of Defendant, Plaintiffs and Class Members have been deprived of reimbursement in amounts to be determined at trial; they are entitled to recovery of such amounts, plus interest and penalties thereon, attorneys' fees, and costs.

## EIGHTH CAUSE OF ACTION
### VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 –
### UNFAIR AND UNLAWFUL BUSINESS PRACTICES

128.    Plaintiffs re-allege and incorporate all preceding paragraphs, as though set forth in full herein.

129.    Plaintiff, on behalf of herself, the Class, and the general public, bring this claim pursuant to Business & Professions Code § 17200 *et seq*. The conduct of OnTrac as alleged in

this Complaint has been and continues to be unfair, unlawful, and harmful to Plaintiffs and Class Members and the general public. Plaintiffs seek to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure § 1021.5.

130. Plaintiffs are a "person" within the meaning of Business & Professions Code § 17204, suffered injury, and therefore has standing to bring this cause of action for injunctive relief, restitution, and other appropriate equitable relief.

131. Business & Professions Code § 17200 *et seq.* prohibits unlawful and unfair business practices. By the conduct alleged herein, Defendant's practices were unfair in that Defendant's policy and practice failed to provide the required amount of compensation for missed meal and rest breaks, and failed to adequately compensate Plaintiffs and Class Members for all non-production time, due to a systematic business practice that cannot be justified, pursuant to the applicable Labor Code and Industrial Welfare Commission requirements in violation of California Business and Professions Code §§ 17200, *et seq.*, and for which this Court should issue injunctive and equitable relief, including restitution of wages wrongfully withheld.

132. Wage-and-hour laws express fundamental public policies. Paying employees their wages, providing them with meal periods and rest breaks, etc., are fundamental public policies of California. Labor Code § 90.5(a) articulates the public policies of this State vigorously to enforce minimum labor standards, to ensure that employees are not required or permitted to work under substandard and unlawful conditions, and to protect law-abiding employers and their employees from competitors who lower costs to themselves by failing to comply with minimum labor standards.

133. Defendant has violated statutes and public policies. Through the conduct alleged in this Complaint Defendant has acted contrary to these public policies, has violated specific provisions of the Labor Code, and has engaged in other unlawful and unfair business practices in violation of Business & Professions Code § 17200 *et seq.*.

134. By the conduct alleged herein, Defendant has engaged and continues to engage in a business practice which violates California law, including but not limited to, the applicable IWC Wage Order and the Labor Code (including sections 203, 204, 226, 226.2, 226.7, 512, 1194,

1197, and 1198), for which this Court should issue declaratory and other equitable relief as may be necessary to prevent and remedy the conduct held to constitute unfair competition, including restitution of wages wrongfully withheld.

**NINTH CAUSE OF ACTION**
**VIOLATION OF LABOR CODE § 2802 -**
**REIMBURSEMENT OF NECESSARY EXPENDITURES**

135.    Plaintiffs re-allege and incorporate all preceding paragraphs as though set forth in full herein.

136.    Plaintiffs and other delivery drivers were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

137.    The FLSA requires that employees receive overtime premium compensation "not less than one and one-half times" their regular pay rate for hours worked over 40 per week.  *See* 29 U.S.C. § 207(a)(1).

138.    Defendant violated the FLSA by failing to pay Plaintiffs and other delivery drivers overtime premium compensation for all hours worked over 40 per week.

139.    In violating the FLSA, Defendant acted willfully and with reckless disregard of the clearly applicable FLSA protections and, as such, willfully violated the FLSA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

1.    For an order certifying this action as a class action;

2.    For an order certifying this action as a collective action;

3.    For compensatory damages in the amount of the unpaid minimum wages for work performed by the Class;

4.    For liquidated damages in the amount equal to the unpaid minimum wage and interest thereon;

5.    For liquidated damages in the amount equal to the unpaid overtime wages owed and interest thereon;

6.    For damages in the amount of the hourly wage made by the Class for each missed or deficient meal and/or rest period where no premium pay was paid;

7.      For penalties pursuant to Labor Code § 226(e) for Employees, as may be proven;

8.      For restitution and/or damages for all amounts unlawfully withheld from the wages for all class members in violation of Labor Code § 221, as may be proven;

9.      For restitution and/or damages for all amounts unlawfully withheld from the wages for all class members in violation of Labor Code § 2802, as may be proven;

10.     For restitution for unfair competition pursuant to Business & Professions Code § 17200 *et seq.*, including disgorgement or profits, as may be proven;

11.     For an order enjoining Defendant and their agents, servants, and employees, and all persons acting under, in concert with, or for them, from acting in derogation of any rights or duties adumbrated in this Complaint;

12.     For all general, special, and incidental damages as may be proven;

13.     For an award of pre-judgment and post-judgment interest;

14.     For an award providing for the payment of the costs of this suit;

15.     For an award of attorneys' fees; and

16.     For such other and further relief as this Court may deem proper and just.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby request trial by jury on all claims and issues that are so triable.

DATED:  January 8, 2021                           SOMMERS SCHWARTZ, P.C.

_/s/ Trenton R. Kashima_____
Trenton R. Kashima (SBN 291405)
tkashima@sommerspc.com
402 West Broadway, Suite 1760
San Diego, California 92101
Telephone: (619) 762-2125
Facsimile: (619) 762-2127

SOMMERS SCHWARTZ, P.C.
Kevin J. Stoops (SBN 332200)
kstoops@sommerspc.com
Charles R. Ash, IV (*pro hac vice* pending)
crash@sommersp.com
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: (248) 355-0300
Facsimile: (248) 436-8453

*Attorneys for Plaintiffs and all others similarly situated*